# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

HAROLD DENNIS SHARP, )
)
Plaintiff, )
)
vs. )        Case No. CIV-10-622-W
)
GEO GROUP, DAVID MILLER, )
ENROLL HANCOCK, et al., )
)
Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff Harold Dennis Sharp,[1] a prison inmate in the custody of the State of

Oklahoma who is appearing *pro se* and *in forma pauperis*, has filed a civil rights complaint

pursuant to 42 U.S.C. § 1983 alleging that his Eighth and Fourteenth Amendment rights have

been violated during his incarceration at the Lawton Correctional Facility ("LCF") [Doc. No.

1]. The matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).

In accordance with the undersigned's order and with *Martinez v. Aaron*, 570 F. 2d 317

(10th Cir. 1978), a Special Report was conventionally filed by LCF. *See* Doc. No. 36. The

three named Defendants have filed a motion to dismiss or, alternatively, for summary

judgment [Doc. No. 33] to which Plaintiff has responded [Doc. No. 37]. For the reasons that

follow, the undersigned recommends that Defendants' motion be granted.

---

[1]Plaintiff identifies himself in the caption of his complaint as Harold Dennis *Shoup* [Doc. No. 1, sequential p. 1]. The name Harold Dennis *Sharp* is used in all subsequent filings.

**Plaintiff's Complaint**

Plaintiff states that[2]

> [t]he nature of the case involves health code violations on behalf of the Defendant when they arbitrarily delivered the Plaintiffs food in an unorderly fashion and allowed for animals to live and deficate in the living space of the Plaintiff. The Plaintiff also states that the Defendant acted negligent when the wardens designee willingly perverted the Plaintiffs due process rights and deliberlatly delayed his opportunity to have his grievances heard by the appropriate parties.

[Doc. No. 1, sequential p. 2]. In the first of three counts, Plaintiff maintains that the Defendant warden was responsible for the actions of the "wardens designee" who "willingly and deliberatly delayed the Plaintiff in the grievance process" from January through June, 2010. *Id.* at sequential pp. 2 - 3. Plaintiff maintains that he "was forced to suffer due to the inactions of the wardens office, which resulted in the Plaintiff becoming ill and mentally unstable suffering anxiety and depression." *Id.* at sequential p. 3.

It is Plaintiff's claim in count two that from November, 2009 through April, 2010, sack lunches were prepared for the inmate population due to a mandatory lock down. *Id.* at sequential p. 4. Plaintiff alleges that the lunches were placed in trash bag liners which were dragged across the ground from cell to cell and would often tear, causing "the Plaintiffs food to come into contact with contaminates on the ground." *Id.* Plaintiff further contends that birds defecated in his living area and that the bags were dragged over both the resulting contaminates and water which was on the floor. *Id.* at sequential p. 5. Plaintiff claims that

---

[2]Unless otherwise indicated, quotations in this report are reproduced verbatim.

when the bags were torn, the food in the sack lunches absorbed the contaminated water. *Id.*

Plaintiff also contends that the "employees" who passed out the food did not wear gloves in

violation of policy and that bird feces were also found on laundry tables with the resulting

contamination of Plaintiff and his clothes. *Id.* Plaintiff alleges that the Defendant warden

was made aware of these practices but, nonetheless, condoned them and thus "did willfully

threaten and expose the Plaintiff to unsanitary and health conditions that made the Plaintiff

ill and forced to seek medical and psychiatric care for the offenses. . . ." *Id.* at sequential p.

3.

Through count three, Plaintiff complains about being forced to live for over a year

with a bird – and its feces – in his dorm. *Id.* at sequential p. 6. He alleges that "the

defendant" was aware of the bird and that "because of the defendants actions," – presumably,

allowing the bird to live there – "Plaintiff became ill and was made to suffer abdominable

pains and headaches even having to have his blood checked." *Id.*

Apart from named Defendant Warden David Miller, Plaintiff has named two other

Defendants whom he describes in the following manner:

> Eroll Hancock is the kitchen manager for the Defendant. He was made
> aware that this issue was brought to the attention of the courts in a previous
> lawsuit, but made no attempts to change the behavior or conduct of them who
> he was responsible for the delivery of the food to the inmate population. But
> his willful neglect caused the Plaintiff to suffer from the said accusations.

* * *

> GEO Group, the owner and Defendant of the Lawton Correction
> Facility inLawton Oklahoma is said to be responsibels per say for allowing the
> two mentioned Defendants to continue in this manner. Because the Defendant

3

GEO Group, was made aware of the actions of this facility in a previous lawsuit concerning the same issue, but instead the Defendant GEO Group made no attempt to change or alter policiea concerning the living conditions and food preparations and deliveries. So the Defendant GEO Group is also liable in this manner as all three mentioned Defendants are acting under the colour of law.

*Id.* at sequential p. 8. Actual monetary damages are sought. *Id.* at sequential p. 9.

### Standard of Review

### Dismissal

In reviewing the sufficiency of the complaint, the court considers whether Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *Sunrise Valley, LLC v. Kempthorne,* 528 F.3d 1251, 1254 (10th Cir. 2008), *cert. denied,* 129 S.Ct. 2377 (2009). A pro se plaintiff's complaint must be broadly construed under this standard. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "broad reading" of pro se complaints dictated by *Haines* "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. The court reviewing the sufficiency of a complaint "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

### Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view

the facts and inferences drawn from the record in the light most favorable to the nonmoving

party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006)

(quotation omitted). And, while a *pro se* plaintiff's complaint is liberally construed, a *pro*

*se* plaintiff must adhere to the same rules of procedure which are binding on all litigants.

*Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a *pro se*

plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those

requirements, the Supreme Court has determined that

> the plain language of Rule 56 . . . mandates the entry of summary judgment,
> after adequate time for discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof at
> trial. In such a situation, there can be "no genuine issue as to any material
> fact," since a complete failure of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**Analysis**

**Exhaustion of Administrative Remedies**

Defendants maintain as a statement of undisputed material fact that "[a]s to all issues

except for a bird being on the unit, Plaintiff has not exhausted his administrative remedies."

[Doc. No. 33, p. 3]. Because "no unexhausted claim may be considered[,]" *Jones v. Bock,*

549 U.S. 199, 220 (2007), the issue of exhaustion is addressed before reaching the merits of

Plaintiff's case. The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner

exhaust *all* available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 211. A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Defendants contend – and Plaintiff does not argue otherwise – that prior to initiating this lawsuit Plaintiff was required to exhaust his administrative remedies pursuant to the DOC grievance procedures, OP-090124. *See* Oklahoma Department of Corrections Inmate/Offender Grievance Process, OP-090124 [Special Report, Exhibit 19; Doc. No. 37,

6

Attachment 5, pp. 4 - 21]. This process requires an initial, informal attempt to resolve a complaint by talking with the case manager, supervising employee or other appropriate staff. *Id.* at IV.A. If the matter remains unresolved, the inmate must then submit a written "Request to Staff," briefly but specifically describing his complaint. *Id.* at IV.B. Should the informal attempts at resolution fail, the inmate's next step is submission of an "Inmate/Offender Grievance Report Form." *Id.* at V.A. An unfavorable response to the grievance may then be appealed to the Administrative Review Authority or Chief Medical Officer, as appropriate. *Id.* at VII. The ultimate ruling of the Administrative Review Authority or Chief Medical Officer concludes the administrative process available to an inmate through the Oklahoma Department of Corrections. *Id.* at VII.D.

Defendants have submitted a verified statement by David Clark, the Grievance and Appeal Coordinator at LCF [Special Report, pp. 1 - 13] which details several "rejections" of Plaintiff's appeals – both as to interference with his grievance rights and as to improper food handling – by the Administrative Review Authority at the final stage of the exhaustion process. Specifically, as to Plaintiff's Count I grievance interference claim, Mr. Clark recounts, *id.* at p. 7, a grievance that was denied by the LCF Grievance Coordinator because it was not timely filed[3] [Special Report, Attachment 11]. Mr. Clark then states [Special Report, p. 7] that Plaintiff appealed this action to the Administrative Review Authority where

_____

[3]The grievance was actually returned to Plaintiff as "unanswered" by the LCF Grievance Coordinator because it was out of time from the date of the incident [Special Report, Attachment 11].

it "was also denied as 'out of time from the date of the incident.'" [Special Report, Attachment 12]. Contrary to Mr. Clark's claim, the Administrative Review Authority did not "deny" Plaintiff's grievance. Rather, it returned the grievance to Plaintiff as "unanswered," stating that Plaintiff could correct and resubmit his grievance within a specified time period. *Id.* The DOC grievance process, however, does not empower the Administrative Review Authority to return a grievance as unanswered when it discerns a procedural defect in that underlying grievance. *See Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010) ("[T]he [Administrative Review Authority] exceeded its authority when it returned [the inmate's] appeal unanswered."). Because the Administrative Review Authority exceeded its powers by returning Plaintiff's grievance as "unanswered,"[4] Plaintiff was prevented from completing the grievance process in this instance.

According to Mr. Clark's evidence, the administrative review authority likewise returned grievances as "unanswered" in connection with Plaintiff's efforts to exhaust his claims as to improper food handling [Special Report, p. 10; Attachment 29; and, Attachment 30]. Because Defendants' own evidence establishes that Plaintiff was prevented from completing the grievance process with respect to his grievance interference and improper food handling claims, Defendants have failed to establish their affirmative defense of failure

---

[4]In apparent response to the decision in *Little,* the DOC grievance policy effective May 24, 2011, has given the Administrative Review Authority the power "to return *grievances* and grievance appeals *unanswered* then they contain more than one issue *or when they fail to be filed in accordance with this procedure."* *See* Oklahoma Department of Corrections Inmate/Offender Grievance Process, OP-090124, § VII.B.1.e (emphasis added).

to exhaust administrative remedies.

**Defendant GEO Group, Inc.**

By their dispositive motion, Defendants maintain that Plaintiff cannot establish the requisite personal participation by any named Defendant [Doc. No. 33, p. 6]. As to named Defendant GEO Group, Inc., the law in the Tenth Circuit is clear: a private corporation such as GEO Group, Inc., "cannot be held liable *solely* because it employs a tortfeasor - or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Smedley v. Corrections Corp. of America,* 175 Fed. Appx. 943, 946 (10th Cir. 2005) (quoting *Monell v. Dep't of Social Services of New York,* 436 U.S. 658, 691 (1978) (emphasis in original)). "[I]n order to hold [a private entity acting under color of state law] liable for the alleged tortious acts of its agents [Plaintiff] must show that [the private entity] directly caused the constitutional violation by instituting an 'official municipal policy of some nature,'. . . that was the 'direct cause' or 'moving force' behind the constitutional violations." *Smedley,* 175 Fed. Appx. at 946.

In responding to Defendants' dispositive motion, Plaintiff makes no attempt to identify a requisite policy or custom or to otherwise establish personal participation on the part of GEO Group, Inc. [Doc. No. 37]. The only allegations in his complaint are that GEO Group, Inc. is responsible per se for the actions of Defendants Miller and Hancock and that "GEO Group, was made aware of the actions of this facility in a previous lawsuit concerning the same issue, but . . . made no attempt to change or alter policea concerning the living conditions and food preparations and deliveries." [Doc. No. 1, sequential p. 8]. Plaintiff does

9

not suggest, however, how his allegations in a previous lawsuit brought in this district, *Sharp v. GEO Group, Inc.,* Case No. CIV-08-1029-W, equates with a custom of affirmatively permitting the exposure of food to the feces of a bird living in the facility. Plaintiff has not provided any evidence that GEO Group, Inc., maintained an official policy that was the "direct cause" of his alleged injuries, and summary judgment for GEO Group, Inc., is recommended.

**Grievance Interference**

In describing the nature of his case, Plaintiff maintains that "the wardens designee willingly perverted the Plaintiffs due process rights and deliberately delayed his opportunity to have his grievances heard by the appropriate parties." [Doc. No. 1, sequential p. 2]. Through the first count of his complaint, Plaintiff maintains that the unnamed "wardens designee" deliberately delayed Plaintiff's efforts to administratively grieve his various complaints. *Id.* According to Plaintiff, "[b]ecause the wardens designee acted in willful deliberance under the authority of the warden of GEO Group Lawton Inc., the warden David Miller is hereby said to be the responsible party to the designees actions." *Id.* at sequential p. 3.

As a matter of law, Plaintiff lacks a protected liberty interest in the processing of his grievances. *See Murray v. Albany County Board of County Commissioners*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 ( 8th Cir. 1993)).

The lack of a protected liberty interest is fatal to Plaintiff's § 1983 claims arising out of the handling of grievances. *See Anderson v. Colorado Department of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) ("allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). Judgment as a matter of law, or alternatively, dismissal is appropriate with regard to Plaintiff's grievance interference claim.

## Living Conditions and Food Handling

Prison officials must ensure that prisoners are afforded "humane conditions of confinement," such as "adequate food, clothing, shelter, and medical care," and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U .S. 825, 832 (1994) (quotation omitted). Establishing an Eighth Amendment conditions-of-confinement claim requires a showing that (1) objectively, the deprivation was "sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities . . . [or] so as [to] constitute a substantial risk of serious harm," *and* (2) that subjectively, the defendants "act[ed] or fail[ed] to act with deliberate indifference to inmate health and safety." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (quotations omitted). Prisoners also establish a claim of cruel and unusual punishment by showing that prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," *Estelle v. Gamble*, 429 U.S. 97, 105 (1976), or that prison officials "have, with deliberate indifference," exposed a prisoner to conditions "that pose an unreasonable risk of serious

11

damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35, (1993).

Prison conditions may be "restrictive and even harsh," however, without rising to the level

of an Eighth Amendment violation. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Here, while Plaintiff has alleged that he suffered injury or damage as a result of the

manner in which sack lunches were served and as a result of the bird in his living area, the

LCF Grievance Coordinator verified in Defendants' Special Report that "Plaintiff did not

make any Medical Requests regarding the allegations in his Complaint." [Special Report, p.

10]. Plaintiff responded as follows:[5]

> The Plaintiff has . . . shown in exhibit marked 1000C., that he in fact contacted the me dical facility and was seen for injuries which occured due to the Defendants actions., and the Plaintiff has likewise shown that he seen the mental health doctors inresponse to injuries which occured due to Defendant and their actions.

[Doc. No. 37, sequential p. 4]. Plaintiff has attached a Request for Medical Services dated

July 3, 2010, reflecting that he wished to be seen at "Mental Health" and stating: "Dr.

Cummings, When do you plan to renew my Zoloft 100 mg medication? The medical staff

will not deliver my prescriptions until you renew them." *Id.,* Exhibit 1000C, p. 1. Plaintiff's

second exhibit is another post-complaint Request for Medical Services, this time directed to

"Medical," stating that "I need to renew my Metemucil and IBU 800." *Id.* at p. 2. An

---

[5]"[A] *Martinez* report is treated like an affidavit and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence. Nevertheless, a plaintiff's conclusory allegations are insufficient to put a material fact in dispute." *Fisher v. Mullin,* 213 Fed. Appx. 698, 701 (10th Cir. 2007) (citations, quotations, quotation marks, and brackets omitted).

appointment with a nurse was scheduled. *Id.*

Plaintiff's response – like his complaint – is unverified.  He offers no *proof*; rather, he relies only on his conclusory allegations to establish that he suffered from any physical or mental injury as a result of Defendants' alleged actions.[6]  Thus, Plaintiff has failed to make a showing of proof against any named Defendant to satisfy a requirement of an Eighth Amendment claim, and summary judgment is appropriate.  *See Celotex,* 477 U.S. at 322-23 ("[T]he plain language of Rule 56 . . . mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *see also Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000).

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, it is the recommendation of the undersigned Magistrate Judge that Defendants' alternative motion for dismissal or summary judgment [Doc. No. 33] be granted.  The parties are advised of their right to object to this Report and Recommendation by June 27, 2011,  in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[6]In his complaint, Plaintiff alleged, for example, that by June 11, 2010 – that date on which he filed his complaint – he "became ill and was made to suffer from abdominable pains and headaches even having his blood checked." [Doc. No. 1, sequential p. 6]. Nonetheless, Plaintiff has not provided *any* evidentiary support for these claims.

This Report and Recommendation disposes of all issues referred to the Magistrate

Judge in this matter.

ENTERED this 6th day of June, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE